OPINION OF THE COURT
David B. Saxe, J.
In this CPLR article 78 proceeding, petitioners Alonzo Jackson (Jackson) and Harris Baylen, as president of Local Union 1931 of District 37, American Federation of State, County and Municipal Employees, AFL-CIO (Local 1931), seek review of a determination by respondents that petitioner Jackson was a probationary employee upon his transfer from the Department of Sanitation (DOS) to the Triborough Bridge and Tunnel Authority (TBTA) and the termination of Jackson’s employment without a formal hearing pursuant to Civil Service Law § 75. Petitioners seek an order restoring Jackson to full *717 permanent civil service status, reinstating him to his former position at TBTA and paying him full back pay and benefits. Respondent TBTA cross-moves pursuant to CPLR 7804 (f) for an order dismissing the amended petition. For the reasons set forth below, TBTA’s cross motion is granted.
The facts are not in dispute.
Petitioner was employed with the DOS as an Assistant Stockhandler. He attained permanent civil service status in August 1986. He was dismissed from this position on March 8, 1990 for misconduct. After his union filed a grievance, Jackson was reinstated to his position. The terms of Jackson’s reinstatement were set forth in a written stipulation of settlement (the Stipulation) executed on July 30, 1990 by DOS, the City of New York by the Office of Municipal Labor Relations, petitioner Jackson and his union. The Stipulation provided, inter alia, that upon Jackson’s reinstatement from suspension, he would serve a one-year probationary period. The Stipulation also specifically provided that should disciplinary charges be brought against Jackson during the probationary period and be sustained at a Step I conference, his employment would then be terminated without any further right of appeal or remedy.
In March 1991, the City Personnel Director was informed that DOS would be laying off a number of persons, including petitioner Jackson, for economic reasons. Jackson’s name was placed on a special transfer list, which made him eligible for transfer, ahead of applicants on the City’s open competitive or promotion list, to vacancies in other agencies. In response to a request by TBTA for a certification of eligible employees for three Assistant Stockhandler positions, the City Personnel Director gave TBTA the names of three persons, one of them being Jackson. However, the staff of the City Personnel Director erred in failing to note Jackson’s probationary status on the certification sent to TBTA.
On March 18, 1991, Jackson accepted the vacant position at TBTA. On that date, he signed a form entitled "Request for Transfer on Change of Title.” He certified that he had read and understood the terms and conditions set forth on both sides of the form and all rules and regulations governing transfers. The back of the form expressly noted that his transfer was "subject to the applicable rules of the City Personnel Director on transfers, Rule VI, Section I, Rules 6.1.1 through 6.1.9”. Also on March 18, 1991, Jackson was mistak *718 enly told by a TBTA personnel supervisor that he would have permanent civil service status at TBTA. In addition, shortly after his transfer, petitioner Local 1931 was incorrectly informed by TBTA personnel that "Jackson was employed in permanent civil service status at TBTA and that his employment was not subject to any probationary period”.
TBTA submitted the request for transfer form to the City Personnel Director. In due course, TBTA received a certificate of approval of the transfer. The certificate of approval was issued on April 22, 1991. It stated that Jackson’s appointment was on condition that he "must complete balance of probationary period ending September 17, 1991.” It was only then that TBTA became aware of Jackson’s probationary status and received a copy of the Stipulation containing the terms of his probation. The certificate was not sent to Jackson or Local 1931.
Within a short time of commencing work at TBTA, Jackson incurred a series of disciplinary violations. Charges were preferred against him in a letter dated July 10, 1991. The letter also informed Jackson that if he were dissatisfied with the results of an informal conference, he would be permitted to proceed with a formal hearing pursuant to Civil Service Law § 75. Immediately after this letter was issued, TBTA realized they had used the wrong form letter because it had referred to a right to a formal hearing which was inconsistent with Jackson’s probationary status. A superseding letter was sent on July 12 correcting the error and advising him that he was subject to termination without appeal if the charges were sustained at the informal conference.
In July and August 1991, Jackson continued to violate TBTA’s rules governing absences and sick leave. The TBTA also discovered the misstatements made on the employment application and personal history questionnaire that Jackson had filled out on March 18, 1991. A new charge letter, similar to the July 12,1991 letter, was issued on August 23, 1991.
Following two separate informal conferences concerning the disciplinary charges, by letter dated September 17, 1991, Jackson was informed that all of the charges preferred against him had been sustained and that his employment with TBTA was being terminated.
Exactly four months later, on January 17, 1992, petitioners served a notice of petition and verified petition on TBTA challenging the termination of Jackson’s employment without *719 affording him a formal hearing pursuant to Civil Service Law § 75. On March 30, 1992, TBTA moved to dismiss the petition on the ground, inter alla, that petitioners had failed to join the City Personnel Director who was an indispensable party. Also on March 30, 1992, TBTA served its answer to the petition. In response to this motion on April 17, 1992, petitioners served an amended petition naming the City Personnel Director as a respondent. On June 10, 1992, the City Personnel Director served its answer to the amended petition which contains, inter alla, a Statute of Limitations defense.
The Statute of Limitations in an article 78 proceeding is four months (CPLR 217). The four-month period begins to run after the determination to be reviewed becomes final and binding on the petitioner where the petition seeks judicial review of an agency determination (Matter of Bernstein v Industrial Commr. of State of N Y, 59 AD2d 678 [1st Dept 1977]; Matter of Foy v Brennan, 285 App Div 669 [1st Dept 1955]). A determination becomes "final and binding” when the aggrieved party is notified of the determination (New York State Assn. of Counties v Axelrod, 78 NY2d 158 [1991]; Matter of Village of Westbury v Department of Transp., 75 NY2d 62, 72 [1989]; Matter of Edmead v McGuire, 67 NY2d 714 [1986]). "[Fundamental fairness * * * compel[s] the conclusion that a petitioner should not be held to have been dilatory in challenging a determination of which he was not aware” (Matter of Biondo v New York State Bd. of Parole, 60 NY2d 832, 834 [1983]). The court must "resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court” (Matter of Castaways Motel v Schuyler, 24 NY2d 120, 126-127 [1969]).
The amended petition alleges that respondent City Personnel Director made an illegal determination regarding petitioner Jackson’s probationary status. This determination was made on April 22, 1991 when the City Personnel Director issued a "Certificate of Approval” of petitioner Jackson’s transfer. This certificate states that the appointment was on condition that Jackson "complete [the] balance of probationary period ending September 17, 1991.” Although this certificate was sent to the TBTA, it was not sent to petitioner Jackson or his union representative. Similarly, the July 12 and August 23 letters are from the TBTA, not the City Personnel Director, and in no way reveal that TBTA was treating petitioner Jackson as a probationary employee because of an earlier determination by the City Personnel *720 Director. At no time thereafter was the role of the City Personnel Director revealed. The court finds therefore that petitioners were "notified” of the determination of the City Personnel Director when they received TBTA’s motion to dismiss the petition on or about March 30, 1992. Therefore, petitioners’ claim against the City Personnel Director is timely having been brought on April 17, 1992 and within the four-month Statute of Limitations.
Although this action is timely as against the City Personnel Director, the amended petition does not state a claim upon which relief can be granted. Petitioners are asking this court to rule that the Stipulation Jackson arrived at with DOS, is limited solely to that Department and cannot be applied to other City agencies participating in the civil service system — a system which allowed Jackson the privilege of transferring under the City Personnel Director’s rules so as to avoid being laid off from work. Petitioners offer no authority to support this proposition.
Section 554 of the Public Authorities Law mandates that civil servants who are transferred from a New York City agency to TBTA "shall have the same status * * * after transfer to the authority as they had under their original appointment.” This means that a civil servant with permanent civil service status who transfers from a New York City agency to TBTA retains the status of a permanent civil servant. It also means that a probationary employee who undergoes the same transfer retains his or her probationary status.
By virtue of the Stipulation Jackson signed on July 30, 1990, his permanent civil service status was significantly altered. While he did not become a probationary employee within the meaning of Civil Service Law § 63,[1] the Stipulation placed him on probation for a period of one year during which time Jackson agreed to forgo certain rights and privileges of a permanent civil servant — one of them being the right to a formal hearing pursuant to Civil Service Law § 75. This was *721 Jackson’s "status” on March 18, 1991 and, in accordance with Public Authorities Law § 554, he was only entitled to the same status at TBTA.
Furthermore, when Jackson applied for a transfer to TBTA, he was notified that his transfer would be subject to the City Personnel Director’s rules governing transfers.[2] Rule 6.1.6 of these rules (13 RCNY, tit 59, Appendix A) provides as follows:
"Eligibility of Probationers for Transfer. An employee on probation shall be eligible for transfer: provided however, that:
"(a) if such transfer is voluntary such employee shall serve the entire period of probation on the job in a pay status in the new position in the same manner and subject to the same conditions as required upon such employee’s employment in the position from which transfer is made, and in accordance with the provisions of paragraph 5.2.1;
"(b) if such employee is involuntarily transferred from one agency to another due to a transfer of personnel upon a transfer of function, or if such employee transfers voluntarily to avoid layoff resulting from a reduction in force, then, in either of such events, such employee shall receive credit for the period of time already served on probation(Emphasis supplied.)
This rule clearly spells out that if a probationary employee voluntarily agrees to a transfer to avoid a layoff, as is the case here, his transfer is subject to the employee completing any probationary period then being served. By virtue of the Stipulation, on March 18, 1991, the date of the transfer, Jackson was a probationary employee with nine months of probation remaining to be served. That his transfer to TBTA was made subject to nine more months of probation is entirely consistent with the Stipulation, compelled by both section 554 of the Public Authorities Law and rule 6.1.6 of the City Personnel Director’s rules and is neither arbitrary and capricious nor an abuse of discretion within the meaning of CPLR 7803 (3).
Petitioners next argue that the City Personnel Director acted unlawfully and unconstitutionally by stripping Jackson of his permanent civil service status without proper notice, a formal hearing, review and appeal rights as required by the Civil Service Law. However, as discussed above, Jackson’s *722 permanent civil service status was altered by virtue of the Stipulation, not by the City Personnel Director, and petitioners do not suggest that the Stipulation was other than " 'freely, knowingly and openly arrived at, without taint of coercion or duress’ ” (Montiel v Kiley, 147 AD2d 402, 404 [1st Dept 1989]). Furthermore, it is incredible to suggest, as petitioners do here, that TBTA is bound to give Jackson the benefit of such privileges as the special transfer list and the full-time employment which resulted from that list, while Jackson is not bound by the probation he agreed to with DOS because he did not, at the time he entered into the Stipulation, make an evaluation of the likely good faith and fair dealing of that agency with respect to enforcement of the terms of the Stipulation. The Stipulation is silent as to its force and effect in the event of a transfer and common sense dictates that Jackson would not have intended the Stipulation to be unenforceable so as to preclude him from accepting a transfer to avoid a layoff.
The fact that TBTA officials told petitioner Jackson on March 18, 1991 and his union representative shortly thereafter that Jackson would have permanent civil service status at TBTA does not estop TBTA from treating Jackson as a probationary employee.[3]
The doctrine of equitable estoppel "rests upon the word or deed of one party which is rightfully relied upon by another who, as a result, changes his position to his injury, so that it would be inequitable to permit the first to enforce rights inconsistent therewith” (57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 13 [1986]). It is well settled that estoppel is generally unavailable against a public agency (Public Improvements v Board of Educ., 56 NY2d 850, 852 [1982]). "[T]he doctrine should only be applied when failure to do so would operate to defeat a right legally and rightfully obtained. It cannot operate to create a right” (Matter of McLaughlin v Berle, 71 AD2d 707, 708 [3d Dept 1979], affd 51 NY2d 917).
Equitable estoppel is unavailable to petitioners here for two reasons. First, it is nowhere alleged that petitioner Jackson or his union relied on any of these mistaken assurances by TBTA to their detriment. On March 18, 1991, Jackson was faced *723 with two choices: accepting a layoff from DOS or a transfer to TBTA. There is no allegation, nor is it likely, that had Jackson been correctly informed that his probationary status would remain unchanged, he would have rejected the proffered transfer. Second, the doctrine of equitable estoppel cannot be used to create a right or place the petitioner in a better position. Here, petitioner Jackson had no right to be treated as a permanent civil servant until the expiration of a one-year period of probation. As discussed above, the transfer to TBTA did not accord him that right nor can such a right be created by virtue of an administrative error on the part of the City Personnel Director. The precedent set by invoking estoppel here would be very troublesome as administrative errors are bound to occur in the handling of personnel changes (see, Eden v Board of Trustees, 49 AD2d 277, 284 [2d Dept 1975]).
Accordingly, TBTA’s cross motion is granted and the amended petition is hereby dismissed as against both respondents.

. As petitioners correctly point out, the disciplinary probation imposed upon Jackson by the Stipulation differs in several respects from the initial civil service probation which is imposed by virtue of section 63 of the Civil Service Law. For example, a section 63 probationer has no vested rights whatsoever, and may be terminated without reason and without a hearing (Matter of Talamo v Murphy, 38 NY2d 637, 639 [1976]). In contrast, the Stipulation provided Jackson with the right to a Step I hearing prior to any disciplinary discharge.

. The back of the request for transfer form that Jackson signed on March 18, 1991 expressly noted that his transfer was "subject to the applicable rules of the City Personnel Director on transfers, Rule VI, Section I, Rules. 6.1.1 through 6.1.9.”

. Respondents do not deny that these statements were made but point out that they were based on the mistaken entry contained on the certification generated by the City Personnel Director that Jackson was not then on probation.